RICE
v.
THE STATE.

RICE *v.* THE STATE.

The constitution of the state, in relation to the acts of the legislature, is the supreme law of the state; and in case of conflict, the acts of the legislature must yield, as being void.

It is the duty of the Courts, in every case before them for decision, to decide and declare the law governing the case.

Where the compatibility of a statute with the constitution is in question, the Courts must determine the meaning of both, and whether they can stand together.

The duty of the Courts to give construction to laws, and to declare legislative enactments void or inoperative as being in conflict with the constitution, grows, of necessity, out of the other duty of declaring what the law is.

The act of 1855 creating the twelfth judicial circuit, so far as it relates to the creating of that circuit, is constitutional.

But the section of that act which declares that a vacancy exists in the office of judge and requires the governor to fill it, is unconstitutional.

The question whether a right has vested or not, is, in its nature, judicial, and must be tried by the judicial authority.

The appointment by the governor of the honorable *John Pettit* as judge of the twelfth judicial circuit, on the ground that there was a vacancy, the circuit having been newly created and there having been yet no incumbent of the office, was valid.

Indictment for murder. Certain jurors were examined in relation to their competency, who stated that they had heard considerable talk about the case, and had read the newspaper accounts of it; that they were rather inclined to think, if what they had heard was correct, the prisoner was guilty; that they had never talked with any of the witnesses, had never formed or expressed an opinion, had no ill-will against the prisoner, and could give him a fair trial according to the law and evidence. *Held*, that the jurors were competent.

A juror may be regarded as reasonably unexceptionable, who has capacity, honesty, independence, and freedom from prejudice and from any opinion founded upon the particular evidence given in the cause.

On the trial of a prisoner for the murder of *A.*, the Court permitted a witness to detail statements made to him, the witness, by one *B.*, in the absence of the prisoner, and ten days before the murder was perpetrated; it having first been proved by the state that the prisoner and *B.* were present at and participated in the murder of *A.* *Held*, that the evidence was properly admitted.

The statute authorizing capital punishment for the crime of murder, is not in conflict with the constitution.

It is competent for the legislature to confer upon the jury the right to determine, in each particular case, whether capital punishment or imprisonment for life shall be inflicted for the crime of murder.

APPEAL from the *Tippecanoe* Circuit Court.

PERKINS, J.—In *June*, 1855, *Abram Rice* was convicted, in the *Tippecanoe* Circuit Court, holden by the honorable *John Pettit* as judge thereof, of the murder of *Cephas Fahrenbaugh*. The county of *Tippecanoe* was a part of the twelfth judicial circuit, created by the legislature of 1855. Acts of 1855, p. 68. *Rice* has appealed to this Court, and here asks a reversal of the judgment and sentence passed against him below:

1. Because the act creating the twelfth judicial circuit is unconstitutional.

2. Because the appointment of judge *Pettit* was invalid.

3. Because the Court erred in refusing to set aside two jurors as incompetent.

4. Because the Court erred in admitting evidence of the declarations of an alleged co-conspirator.

5. Because the Court erred in its charge to the jury.

6. Because the death penalty is in violation of section 18 of article 1 of the constitution.

1. In proceeding to consider the first ground taken for the reversal of the judgment in this case, viz., the unconstitutionality of the act creating the twelfth judicial circuit, we are met at the threshold by the inquiry, is any question presented by that ground for judicial examination and decision? It is insisted, on the part of the state, that the passage of the act was a matter of simple legislative discretion, not to be controlled by the judiciary; that the constitution contains a general grant of legislative power, and contains no express prohibition of the exercise of that power in the passage of such laws as the one now involved, and that, hence, the judiciary has nothing to do but enforce the law. The question must be very briefly examined, when should the judiciary declare a law unconstitutional? Should it ever do so?

There are some propositions that may be regarded, we think, at this day, as being settled; as having passed into the rank of maxims or axioms in *American* jurisprudence. Among them are these:

*Margin notes:* Nov. Term, 1855. RICE v. THE STATE. Monday, December 24.

That the constitution of the state, relatively to the acts of the legislature, is the paramount or supreme law:

That when the two conflict, the acts of the legislature must yield as utterly void:

That it is the duty of the Courts, in every case arising before them for decision, to decide and declare the law governing the case.

It may be mentioned as a fact, also, that the judges of the Courts are sworn to support the constitution, but are not, at least expressly, sworn to support the legislative acts of the state.

It follows, of consequence, from the foregoing propositions, that the Courts, in ascertaining what the law of a case is, whether the statute or the constitution, or both, where the two are involved, must determine the meaning both of the statute and the constitution, and the capability of the two to stand together.

The duty of the Courts to give construction to laws, and to declare void, or disregard because not laws, those legislative acts in conflict with the constitution, grows, of necessity, out of this other duty of declaring what the law is.

The right and duty of the Courts, therefore, to compare legislative acts with the paramount law, and to bring them to its test, are not of the seeking of the Courts, but are forced upon them, in every case where the two may have application.

If the constitution ordains that property and liberty shall be safe; that the press shall be free; that religious liberty shall be preserved; and the legislature enacts laws touching these subjects, the Courts can not escape the office, delicate and unwelcome to be performed as it may be, of deciding whether those laws are consistent with the constitution or not.

So in the case before us, the constitution contains provisions touching local legislation, the election of officers, the filling of vacant offices, &c., and the legislature has enacted a law raising questions under those provisions, and this Court must, therefore, determine whether it is,

Nov. Term,
1855.

RICE
v.
THE STATE.

in fact, a law or not;' and in doing so, if we confine ourselves within settled rules of construction and interpretation, we may hope to escape the charge of judicial tyranny and usurpation. *Marbury* v. *Madison*, 1 Cranch 137.— *Maize* v. *The State*, 4 Ind. R. 342.—*Spencer* v. *The State*, 5 *id.* 41.

Counsel assert a great truth when they somewhat impatiently exclaim, that it seems we are never to be done with constitutional questions. They will not cease to trouble so long as our written constitution remains, and the judiciary continues to act as arbiter between the people who made it, and the legislatures acting under it. The legislature is the active encroaching power; the judiciary is passive, except in defence; it enacts nothing; it effectually vetoes occasional void enactments of the legislature. *Marbury* v. *Madison, supra.*

The result of the whole matter is, then, that the judiciary should declare a law unconstitutional when it is so, and then only.

Comparing, then, the law in question, so far as relates to the creation of the twelfth judicial circuit, with the constitution, we concur in the conclusion in *Stocking* v. *The State, ante,* p. 326, that it is not inconsistent with it.

The fifth section of the act declares that a vacancy exists in the office of judge, and requires the governor to fill it. That section is unconstitutional; and this brings us to the point made—

2. That the appointment of the judge was invalid. Were said fifth section law, it would, of itself, settle the question, and this Court would have nothing to do with it. But, per C. J. *Marshall*, "the question whether a right has vested or not, is, in its nature, judicial, and must be tried by the judicial authority. If, for example, Mr. *Marbury* had taken the oaths of a magistrate, and proceeded to act as one, in consequence of which a suit had been instituted against him, in which his defence had depended upon his being a magistrate, the validity of his appointment must have been determined by judicial authority." *Marbury* v. *Madison, supra.*

Looking judicially at the question of the appointment of judge *Pettit*, we conclude, as in *Stocking* v. *The State*, *supra*, that it was valid.

3. The jurors objected to by the prisoner and declared competent by the Court, stated, upon examination, that they had heard considerable talk about the case, and had read the newspaper accounts of it; that they were rather inclined to think, if what they had read was correct, the defendant was guilty; that they had never talked with any of the witnesses, had never formed or expressed an opinion, had no ill-will against the defendant, and could give him a fair trial according to the law and the evidence.

We have no doubt of the competency of these jurors. *Morgan et al.* v. *Stevenson et al.*, 6 Ind. R. 169.

In this country, where education and reading are so general, the facilities of intercourse so great, and the diffusion of information by the press is so speedy and universal, it would be almost impossible to procure a jury, composed of men of common intelligence—of sufficient, indeed, to render them competent—who had no knowledge of important events occurring in the state. Again, belief is not an act of volition. The mind yields of necessity to evidence. No compulsion of authority, or force of will, could make a man believe white was black. Either, or prejudice, might induce him to say he believed this or that, but the expression would be a falsehood, if it differed from the involuntary conclusion of his mind upon the evidence. *Galileo*, on the 20th of *June*, 1633, solemnly admitted upon his knees before the inquisition, assembled in the convent of *Minerva* at *Rome*, that the doctrine of the earth's motion was false, and even yet, while rising, whispered to a friend, " It moves for all that." The mind, therefore, of an honest, unprejudiced juror will necessarily be forced to its conclusion by the evidence adduced upon the trial of the cause in which he sits.

Again, a juror can not convict, in all cases, upon mere belief. It must be a belief, founded upon legal evidence, of guilt according to the rules of law. It is probable a

juror not unfrequently retires from the box after agreeing to a verdict of acquittal, for want of legal proof of guilt, believing, at the same time, morally, that the defendant was guilty. What is wanted, therefore, to constitute a reasonably unexceptionable juror is, capacity, honesty, independence, and freedom from prejudice and opinion founded upon the particular evidence to be given in the cause. It does not appear that the jurors objected to in this case did not possess these requisites. Entire freedom from all knowledge of the case would not be undesirable, if it could be obtained in connection with the requisite capacity. But that, in this country, would generally be impossible.

Here the jurors had not talked with the witnesses, and, hence, had no opportunity to form opinions on the testimony to be produced on the trial. See *Goodwin* v. *Blachley et al.*, 4 Ind. R. 438.

4. The Court permitted one *Wolf*, a witness, to detail, on the trial of *Rice*, statements made to him, the witness, by one *Driskill*, a participator in the murder of *Fahrenbaugh*, which statements were made in the absence of *Rice*, and ten days before the murder occurred, it having been first proved by the prosecuting attorney that said *Rice* and *Driskill*, and others, were present at, and participated in, said murder.

We think there was no error in this part of the case. Mr. *Greenleaf*, in his work on Evidence, vol. 1, p. 187, thus lays down what seems to be a reasonable rule upon the subject. He says, "a foundation must first be laid, by proof sufficient in the opinion of the judge to establish, *prima facie*, the fact of conspiracy between the parties, or proper to be laid before the jury, as tending to establish such fact. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore original evidence against each of them. It makes no difference at what

time any one entered into the conspiracy. Every one, who does enter into a common purpose or design, is generally deemed, in law, a party to every act which had before been done by the others," &c. "Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence, before sufficient proof is given of the conspiracy; the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge, and is not permitted except under particular and urgent circumstances."

5. We shall say nothing on the subject of the charge of the Court to the jury. It has been held, in *Driskill* v. *The State*, at this term, that such a charge is not erroneous.

6. It is also decided in *Driskill* v. *The State, supra,* that the death penalty is not in conflict with the 18th section of the first article of our constitution. If any question can be raised before the judiciary upon the discretion of the legislature under that section, we concur that it has not been abused in leaving the question of assessing that penalty to the jury. There are cases beyond the hope of reformation—criminals whose necks have become so hardened "that they should suddenly be cut off, and that without remedy."

*Per Curiam.*—The judgment is affirmed with costs.

*W. F. Lane* and *E. H. Brackett*, for the appellant.

*R. C. Gregory* and *H. W. Chase*, for the state.