STATE OF INDIANA *v*. EVERETT HOLDER ET AL. AND
STATE OF INDIANA *v*. EDWARD E. RENTCHLER ET AL.

[No. 1071S295; 971S280.  Filed May 9, 1973.]

*Theodore L. Sendak,* Attorney General, *Stephen D. Clase,* Deputy Attorney General for appellant.

*Donald G. Hendrickson,* of Boonville, for appellees.

DeBruler, J.—These cases have been consolidated on appeal since they raise substantially the same questions. They are both appeals by the State in eminent domain proceedngs from a portion of the final orders of the Warrick Circuit Court which awarded to the appellee-landowners, attorney, professional witness and trial preparation fees.

In July of 1969, the State of Indiana filed a complaint to condemn certain lands owned by appellee-Holder in order to make way for a highway. Appellee-Holder made no objections to this complaint and on August 14, 1969, the court appropriated the land and appointed appraisers. The appraisers found the appropriated land to be worth $8,335.90. The State then filed exceptions to that amount on September 11, 1969, and demanded a jury trial on the amount of damages. The appellants did not file exceptions.

Trial was set for May 28, 1970. On May 27th, the State filed a Motion for Withdrawal of Plaintiff's Exceptions which

was granted over appellants' objections. Shortly thereafter the court awarded appellants the amount of damages recommended by the appraisers and further ordered the State to pay $500.00 in attorney fees and $100.00 for professional witness and trial preparation fees to the appellants.

In the Rentchler case the State filed its complaint for the appropriation of land on August 14, 1969. On August 29, 1969, the trial court ordered the appropriation of the Rentchler land and appointed three appraisers who returned a report showing damages at $3,397.15. The State then filed its exceptions to the appraisers' report on September 17, 1969. On November 2, 1970, the State withdrew its exceptions to the appraisers' report and on that same day the court entered judgment on the amount shown in the original report. The court subsequently entered an additional order of an award of $500.00 to be paid by the State to appellees for their attorney fees. The State is appealing that part of these orders concerning the payment of the various fees for the appellees' professional services.

It is generally agreed that since costs were unknown at common law the right of their recovery is statutory and thus may be awarded by a court only when there is statutory authorization to do so. *Stayner* v. *Bruce* (1953), 123 Ind. App. 467, 110 N. E. 2d 511. The Eminent Domain Act does contain such a section which also specifies how cost of a condemnation proceeding will be apportioned:

> "The costs of the proceedings shall be paid by the plaintiff, except that in case of contest, the additional costs thereby caused shall be paid as the court shall adjudge." IC 1971, 32-11-1-10, being Burns § 3-1709.

Appellant contends, however, that attorney, expert witness and trial preparation fees are not "costs" within the meaning of that term or this statute and hence the court's orders to pay these fees is without statutory authorization and erroneous.

A reading of this statute reveals that only a general reference to costs is made and there is no special definition provided as to what a court may consider as costs. It has long been established in this State, however, that the bare term "costs" does not encompass attorney fees. *Hutts v. Martin* (1893), 134 Ind. 587, 33 N. E. 676. The majority of jurisdictions have agreed with this construction and it is widely held that the use of the word "costs" in a statute is not intended to provide for the payment of attorney fees. 26 A. L. R. 2d 1295; 27 Am. Jur. 2d *Eminent Domain* § 476. It is apparent, therefore, that the court's awards of attorney fees to both defendants was without authorization by statute.

The State further objects to that part of the order in the Holder case which awards $100.00 to appellees for "preparing for trial and paying for professional witnesses." The State again contends that this type of expense is not intended to be includable in the word "costs." We agree. Although this is a question of first impression in this State we believe that the word "costs" in this statute was not intended by the Legislature to cover every conceivable expense incurred by the appellees in this type of action, but is used in its ordinary sense and concerns only those usual and ordinary expenses of a trial which are prescribed by statute to be paid to the court.

The decision to retain expert witnesses to testify for the defendant in an eminent domain proceeding concerning damages is a decision left solely to the discretion of the defendant and the amount of professional charges to be paid to defendant's expert should be a matter between defendant and his witness. Likewise trial preparation expenses in a proceeding such as this (which might include mail, travel, telephone and photograph fees) are uniquely those of the individual party to the action and are not usually contemplated to be included in the statutory use of the word "costs." *Manchester Housing Authority* v. *Belcourt* (N. H.

1971), 285 A. 2d 364; *State by Commissioner of Transportation* v. *Mandis* (1972), 119 N. J. Super. 59, 290 A. 2d 154; *Frustuck* v. *Fairfax* (1964), 230 Cal. App. 2d 412, 41 Cal. Rep. 56.

Appellee-Holder in this case attempts to assert error on the part of the trial court in allowing the State to withdraw its exceptions. The record here shows that the appellee-Holder did not file a motion to correct errors preserving those issues and consequently they cannot be considered on appeal. T.R. 59 (G).

We therefore order the trial court to vacate that part of its final judgment in each case which required the State to pay appellees' attorney, trial preparation and expert witness fees, and we affirm the remainder of the judgment.

Givan, J., concurs; Prentice, J., concurs with opinion; Arterburn, C.J., dissents with opinion in which Hunter, J., concurs.

### DISSENTING OPINION

ARTERBURN, C.J.—I dissent from the majority in these cases which holds that the Court may not tax costs which include the expenses of preparing for trial, retaining expert witnesses and employing attorneys, where the plaintiff dismisses the proceedings, seemingly without justification.

In these cases the State brought condemnation actions for highway purposes. It filed exceptions to the reports of the appraisers, thus compelling the defendant-landowners to incur the expense of employing attorneys and expert witnesses. In *Holder* (971 S 280), the day before the jury trial was scheduled to begin, the State withdrew its exceptions and sought a dismissal over the defendant's objections. Thereupon, the court taxed as costs against the Plaintiff five hundred dollars ($500) for attorney fees and one hundred dollars ($100) for professional witnesses and other incidental expenses in preparing for trial. A similar procedure based on nearly

identical facts was followed in *Rentchler* (1071 S 295). I think these awards are in accordance with Rule TR. 41(A)(2) which reads in part as follows:

". . . an action shall not be dismissed at the plaintiff's instance save *upon order of the court and upon such terms and conditions as the court deems proper.*" (emphasis added)

As it is applicable to condemnation cases, as well as general civil litigation, this Rule may be employed to implement the Constitutional clause which specifically requires just compensation when land is taken for public use. Article I, § 21 of the Indiana Constitution reads as follows:

"No man's particular services shall be demanded, without just compensation. *No man's property shall be taken by law, without just compensation;* nor, except in case of the State, without such compensation first assessed and tendered." (emphasis added)

In my opinion, the Indiana Constitution means what it says. "Just compensation" is making one whole for what is taken from him by the State's action. *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 397, 172 N. E. 2d 204, 207; *County of Los Angeles* v. *Ortiz* (1971), 17 Cal. App. 3d 164, 94 Cal. Rptr. 550, 554, *reversed* 6 Cal. 3d 141, 98 Cal. Rptr. 454, 490 P. 2d 1142; *Dade County* v. *Brigham* (Fla. 1950), 47 So. 2d 602, 604.

I acknowledge that under the common law, costs or attorney fees were generally not recoverable as part of the damages in a lawsuit even where the unequal position or oppressive conduct of one of the parties caused a recognition of loss by the other. See 3 BLACKSTONE'S COMMENTARIES, ch. 24 at 399 (1768). In many instances, however, statutes were enacted to provide for the award of attorney and expert witness fees to the prevailing party as a means of protecting parties with meritorious claims or defenses. See eg. 8 & 9 VICTORIE, ch. 18, at 141, §§ 51, 52 at 152-53 (*Statutes at*

*Large* 1845) *(condemnation procedures)*. In fact, England has traditionally been more generous in granting such items, in practically all litigation, to the successful litigant as part of the costs of the action. *See* 30 Halsbury's, LAWS OF ENGLAND, *Practice and Procedure,* pt. 2, § 6, ¶ 793 *et. seq.,* at 419 (1959), and *see* especially *Id.,* ¶¶ 807-09 at 428-31. This country, on the other hand, has been hesitant to sever the ties of antiquity even though many courts have cried out against the injustice of failing to fully compensate condemnees incurring substantial expense in defending themselves or their property. *See United States* v. *Lee* (5th Cir. 1966), 360 F. 2d 449; *County of Los Angeles* v. *Ortiz* (1971), 17 Cal. App. 3d 164, 94 Cal. Rptr. 550 *reversed* 6 Cal. 3d 141, 98 Cal. Rptr. 454, 490 P. 2d 1142; *New Jersey Turnpike Authority* v. *Bayonne Barrel and Drum Co.* (Law Div. 1970), 110 N. J. Super. 506, 266 A. 2d 164; *Dade County* v. *Brigham* (Fla. 1950), 47 So. 2d 602; For the general rule *see* Annot., 26 A. L. R. 2d 1295 *and* NICHOL'S EMINENT DOMAIN § 14.249[4].

In this appeal, we are confronted with neither the common law principle nor questions of "pure" statutory interpretation. Instead, *we are faced with a constitutional provision directly applicable to this very case*—a proceeding in which land is taken for public use. This constitutional provision is self executing in providing full recompense for loss. *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 397, 172 N. E. 2d 204, 207; *Dade County* v. *Renedo* (Fla. 1962), 147 S. 2d 313, 316 (concurring opinion of Hobson, J.) ; See *eg. Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 114, 26 N. E. 2d 399, 407; *Carroll* v. *Green* (1897), 148 Ind. 362, 364, 47 N. E. 223, 224; Compare *Bd. of Comm'rs. of Hamilton County* v. *Blue Ribbon Ice Cream and Milk Corp.* (1952), 231 Ind. 436, 440, 109 N. E. 2d 88, 90, *(tender requirements* of IND. CONST., art. I, § 21 not self executing). All statutes and rules inconsistent therewith

must yield. *Kinnaird* v. *State* (1968), 251 Ind. 506, 513, 242 N. E. 2d 500, 504; *Rice* v. *State* (1855), 7 Ind. 332, 334. Therefore, IC 32-11-1-10 [*Burns' Ind. Stat. Ann.* § 3-1709 (1968 Repl.)] which states:

> "The costs of the proceedings shall be paid by the plaintiff, except that in case of contest, the additional costs thereby caused shall be paid as the court shall adjudge."

must be interpreted to conform with the constitutional provision. This is true even though "costs" in another context might be more limited. See *eg. State* v. *Troxler* (1930), 202 Ind. 268, 173 N. E. 321; *Hutts* v. *Martin* (1893), 134 Ind. 587, 33 N. E. 676; *State ex rel. Friedman* v. *Freiberg* (1919), 70 Ind. App. 1, 122 N. E. 771. The same conformity in interpretation must exist in Rule TR. 41(A)(2) which allows dismissal only upon "terms and conditions as the court deems proper." The policy of this Rule is to avoid harassment and we have, *prima facie*, such a situation here. Moreover, it appears that this Rule is only fair and just. It does not compel taxation of attorney fees in every case, but only in the discretion of the court.

To be realistic about this question, where exceptions to the appraisers report are filed by the condemnor, the landowner is confronted with the burden of establishing the value of his property. To do so, he frequently must retain counsel and expert witnesses, a fact of life recognized by this court in *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 397, 172 N. E. 2d 204, 207. The Florida Supreme Court has quoted with approval the comments of a trial judge in this respect:

> "The courts should not be blind to the realities of the condemnation process. . . . The [trial] Court sees that the County is armed with engineering testimony, engineering data, charts and drawings prepared by expert draftsmen.
>
> The [trial] court sees that the County produces appraisers, expert witnesses relating to value, usually more

than one in number, whose elaborate statement of their qualifications, training, experience and clientele indicate a painstaking and elaborate appraisal by them calling for an expenditure by the County of fees to such experts and appraisers which are commensurate therewith, and customary for like services of such persons. A lay defendant whose property is to be taken is called upon to defend against such preparation and expert testimony of the County. It is unreasonable to say that such a defendant must suffer a disadvantage of being unable to meet this array of able, expert evidence, unless he shall pay for the same out of his own pocket."

Repeated in *Dade County* v. *Brigham* (Fla. 1950), 47 So. 2d 602, 604.

While it is of great significance, the general inequality of resources is not the only justification for recognizing a court's discretion to allow non-statutory litigation costs. It should be understood that a condemnee occupies a far different status than the typical defendant wrongdoer in ordinary civil litigation. He does not necessarily desire to dispose of the property which prior to the state's interest, he has held innocently. See *County of Los Angeles* v. *Ortiz* (1971), 6 Cal. 3d 141, 147, 98 Cal. Rptr. 454, 458, 490 P. 2d 1142, 1146. Moreover, it has been maintained that forcing the landowner to assume litigation costs to prove his claim, in effect, extracts from him more than his proportionate share of the expense of public improvements. *Id.* Finally, I would note that even if the denial of litigation costs was originally warranted in those jurisdictions which have rejected allowance, changed circumstances have made continued adherence archaic. *See New Jersey Turnpike Authority* v. *Bayonne Barrel and Drum Co.* (Law Div. 1970), 110 N. J. Super. 506, 511, 266 A. 2d 164, 166. At an earlier point in our history the valuation of land was a relatively uncomplicated endeavor, not necessarily beyond the competence of laymen. Today, however, the inquiry is much more complex. Consideration must be given to a multitude of factors, the full explanation of which

virtually mandates the employment of expert assistance. For an example of the impact of technology upon eminent domain proceedings, see my opinion, *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 402, 172 N. E. 2d 204, 210.

While the potential of recovering attorney and witness fees should be recognized, they need not be awarded in every condemnation action. Instead, the propriety of allowance should be based upon the facts and circumstances of each case as determined by the trial court in its exercise of sound discretion. This may include an inquiry as to:

> "whether such fees must be included in the award in order to insure the "just compensation" contemplated by the Constitution. In order to realize the market value of his holding, a property owner, *compelled to litigate with the state as to the value,* may well be required to incur substantial financial obligations for professional services calculated to realize his constitutionally guaranteed right. To require payment for such out of the award is not proper since the compensation contemplated by the Constitution is thus reduced by the amount of the expenses incurred. Hence it must be first determined whether or not the defendant was *compelled to litigate.* The answer to the query [may lie] in the reasonableness of the prelitigation offer made by the condemnor judged in the light of the ultimate determination of the trier of fact as to the value. If the offer was substantially equivalent to the award, litigation was not compelled and it would not be reasonable to permit the recovery of these items of expense. On the other hand, if the offer was so disproportionately low that recourse to litigation and the incurring of this expense was *compelled to achieve just compensation* the opposite result should obtain."

*County of Los Angeles* v. *Ortiz* (Cal. App. 1971), 17 Cal. App. 3d 164, 94 Cal. Rptr. 550, 554-55 (emphasis added), *reversed* 6 Cal. 3d 141, 98 Cal. Rptr. 454, 490 P. 2d 1142.

I feel the phrase "compelled to litigate" is the key to any determination that attorney and expert witness fees would be appropriate. An inadequate tender is certainly a significant factor to be considered. Without the possibility of recom-

pense, the landowner must consider all the costs of litigation in determining whether he will accept a lower valuation than that to which he may be entitled. However, the ultimate verdict need not be dispositive of the issues and should not be the only measure of whether litigation costs should be granted. Another factor would be whether the condemnor engaged in dilatory procedural tactics, keeping the landowner in uncertainty for years as to the final disposition of his property and how he may use it in the meantime. Moreover, bad faith or oppressive conduct by either party such as that used by the state in this case, is most relevant in determining if the trial court should exercise its discretion.

As judges, we are not unaware of the abuse of condemnation proceedings by a state by long drawn out litigation and delays. In *New Jersey Turnpike Authority* v. *Bayonne Barrel and Drum Co.* (Law Div. 1970), 110 N. J. Super. 506, 266 A. 2d 164, the state originally tendered $397,036 for the defendant's property. After trial by jury, however, the condemnee was awarded damages of $2,767,000, seven times the original offer. Counsel and expert witness fees were, I feel, properly allowed as a means of making the condemnee whole despite the absence of express statutory authority. The trial judge reasoned that since the agency grossly misjudged the value of the property, extended litigation was forced upon defendant landowner and, under such circumstances, just compensation mandated the allowance of litigation costs. *Id.* at 167.

Another instance of administrative arrogance is *United States* v. *Lee* (5th Cir. 1966), 360 F. 2d 449, where the Corps of Engineers alleged that the property sought consisted of only 1151.56 acres, determined by using a plainimeter rather than the recognized metes and bounds method. Defendant protested that the actual acreage was greater and requested an official measurement. This demand was refused by the Corps who informed the condemnee that he would have to furnish his own survey at his own expense. The results of

defendant's privately endowed survey revealed that the property in fact contained 1182.06 acres. This disparity resulted in an increased award of $6,800, based upon a fixed amount per acre. The costs of the survey were granted in accordance with the Court's analysis of both the just compensation and the due process clauses:

> "When the Government decides to ascertain the actual acreage being taken by means other than a survey on the ground, and the condemnee is put to the expense of showing the correct acreage being taken, it would be a violation of the Constitution to make him bear the cost of such survey, especially when the Government is put on notice that the acreage they claim to be taking is less than what is actually being condemned. To hold otherwise would be to deprive a landowner of his property without due process of law.
>
> * * *
>
> If the Appellees' land had not been condemned, there would have been no need for the survey on the ground involved here. There is no question that if the survey had not been made, the Government would not have stipulated that the amount of acres actually being condemned was 1181.06, and part of the property of the landowners would have been taken without just compensation or due process of law." *Id.*, at 452.

The above two cases are similar to the suits now before us. Here the state sought Mr. Holder's and Mr. Rentchler's property. Independent appraisers found the value to be $8,335.90 as to Holder and $3,397.15 as to Rentchler. Instead of accepting those determinations, the government filed objections and proceeded to play cat and mouse with the condemnees. Belatedly realizing that insistence upon lesser amounts would be futile, the state withdrew its objections. To preserve their claims in the meantime, however, the condemnees were forced to retain counsel and an appraiser. Their fees are substantial, approximately 8 per cent of the property's apparent true value as to Holder and 12 per cent as to Rentchler, but seemingly reasonable. Under these circumstances, if Holder and Rentchler are not allowed to recover

these expenses, can it honestly be contended that they have received just compensation under the Constitution? I think not.

Hunter, J., concurs.

### CONCURRING OPINION

PRENTICE, J.—I concur in the result and in the majority opinion; however, I think we should also respond to the contention presented by Appellants in both cases that the allowance of attorney's fees and witness' fees was permissible under Trial Rule 41(A)(2). Such rule provides that except as provided in sub-section (1), "* * * an action shall not be dismissed at the plaintiff's instance save upon order of the court and *upon such terms and conditions as the court deems proper. * * *.*" (Emphasis ours). The terms and conditions of such a dismissal should ordinarily include the costs of the action. Harvey's Indiana Practice, Vol. 3, p. 216. Under the federal rules, expenses of the adversary, including reasonable attorney's fees have been allowed. Harvey, *supra*, p. 216, citing *Wilson* v. *Jolly* (1948), D. C. Tex., 7 F. R. D. 649. The comments of the Civil Code Study Commission relative to this rule, however, indicate that the "terms and conditions" are subject to the judicial and not to arbitrary discretion, and that in exercising its discretion, the court should follow the traditional principle that dismissals should be allowed unless the defendant will suffer some plain legal prejudice, other than the mere prospect of a second lawsuit. Harvey, *supra*, p. 212. Under this rule, in an appropriate case, the order of dismissal may be with prejudice. The withdrawal of its exceptions by the state amounted to a dismissal with prejudice, inasmuch as the statutory time for filing exceptions had elapsed. Had the exceptions not been withdrawn and the cause proceeded to trial upon the issue of damages, the defendant, nevertheless, could not have recovered its expenses of litigation as items of "costs." It is my view, therefore, that since such items were not recoverable,

the order requiring their payment, as a condition of withdrawal, would not lie within the judicial discretion anticipated by the rule.

NOTE.—Reported in 295 N. E. 2d 799.