369 N.E.2d 1109 (1977)
CITY OF INDIANAPOLIS, through the Department of Transportation, Appellant (Plaintiff below),
v.
CENTRAL RAILROAD COMPANY OF INDIANAPOLIS, Indiana and Penn Central Transportation Company, Appellees (Defendants below).
No. 2-1175A352.
Court of Appeals of Indiana, Second District.
December 13, 1977.
*1110 Jerry W. Newman, Asst. Corp. Counsel, Indianapolis, for appellant.
Elizabeth M. Daily, Edward B. Raub, Jr., Indianapolis, for appellees.
BUCHANAN, Judge.

CASE SUMMARY
Appellant-Plaintiff City of Indianapolis (City) appeals the award of attorneys' fees to Appellees-Defendants Central Railroad Company and Penn Central Transportation Company (the Railroads), claiming there is no legal basis for such an award.
We reverse.

FACTS
The facts and evidence most favorable to the trial court's judgment are:
On September 7, 1973, the City filed a complaint seeking to condemn certain rail spurs owned by the Railroads as part of a street improvement project. The rail spurs, located on South Capitol Avenue in Indianapolis, were sought in order to widen the street as an access route to the "inner-belt" highway then under construction. The railroads filed objections to this suit on September 20, and further objections a few days later.
*1111 On September 26, the trial court appointed independent appraisers to value the spurs and ordered a report to the court of their findings by October 16. The Railroads filed a motion for change of venue from the county, which they later withdrew.
On September 28, the City filed an amended complaint which was objected to by the railroads who sought dismissal. All parties then submitted instructions to the court to be read to the appraisers before they made their final reports.
The appraisers submitted their report on October 16 and assessed damages in the amount of Two Hundred Three Thousand Seven Hundred Fifty ($203,750.00) Dollars to Central Railroad and Two Hundred Fifteen Thousand ($215,000.00) Dollars to Penn Central. The following day the City filed exceptions to the appraisers' report, and on October 17 the Railroads again filed a motion for dismissal, which was overruled. The Railroads praeciped for the record on October 22, 1973, and filed their own exceptions to the report of the appraisers. A change of venue from the judge was also requested and granted.
On March 8, 1974, the City filed a Motion to Dismiss which read as follows:
MOTION TO DISMISS
Comes now the Plaintiff and moves that the court dismiss this cause of action without prejudice for the reason that the said Plaintiff has modified its improvement plans pertaining to D.O.T. Project ST-32-039, known as the improvement of South Capitol Avenue in Indianapolis, Indiana, Marion County. The said project has been modified to the extent that the said railroad spur identified in the Plaintiff's complaint as Exhibit A shall no longer be needed for removal in the said project.
Further, in pursuance of this said motion the Plaintiff would show to the court that the Plaintiff has not taken possession of the said property sought to be appropriated and described as Exhibit A in the said complaint, nor has the Plaintiff paid into the Clerk of Marion County's custody the amount of the court appraiser's award.
WHEREFORE, the Plaintiff prays that the court grant its Motion to Dismiss and dismiss this cause of action without prejudice.
No other reason was given for dismissal of the amended complaint other than the railroad spurs were no longer needed.
On May 15, 1974, a hearing was held in which the sole witness was Billy W. Jones, Chief Engineer of the Indianapolis Department of Transportation (D.O.T.), who testified:
RAILROAD: Where are the funds generated from which pay for that project? [the street widening on Capitol Avenue]
JONES: I am not certain as to exactly what funds are used but I am certain there are no Federal funds, .. .
RAILROAD: It is intended to connect with the innerloop project which is now under construction?
JONES: It would adjoin that project.
Later, on cross-examination:
CITY: For that particular project, are there any federal funds being utilized?
JONES: No, sir.
Still later, on re-direct:
RAILROAD: Can you state without qualification that the Federal Redevelopment Act of 1970 is not applicable?
JONES: That's right, it is not applicable.
The Railroads opposed dismissal of the action, unless their attorneys fees and expenses were paid. Both sides submitted briefs on the issue and on December 13, 1974, the trial court entered judgment (in pertinent part):
1. The Defendant, CENTRAL RAILROAD COMPANY OF INDIANAPOLIS, INDIANA, recover of and from the Plaintiff, CITY OF INDIANAPOLIS, the sum of $5,265.20, with interest thereon at the rate of 8% per annum from the date hereof until such sum is paid.

*1112 2. The Defendant, PENN CENTRAL TRANSPORTATION COMPANY, recover of and from the Plaintiff, CITY OF INDIANAPOLIS, the sum of $7,100.05, with interest thereon at the rate of 8% per annum from the date hereof until such sum is paid.
3. The above entitled cause of action is now hereby dismissed, costs to be taxed against the Plaintiff.
City appeals.

ISSUE
One issue is raised by the City:
(1) Did the trial court properly award attorneys fees on dismissal of the City's complaint for appropriation of the railroad spurs?
Initially, the Railroads contend that provisions of the Eminent Domain Statute[1] are broad enough to allow for the award of attorneys' fees. They argue that Ind. Code § 32-11-1-10[2] which allows for "costs" to be paid by the plaintiff can include attorneys' fees. Further, they argue Ind. Code § 32-11-1-8 (§ 8)[3] which authorizes the trial judge to make findings as may seem just includes the power to assess attorneys' fees.
The City replies that the case law of this State specifically rejects this argument.
The Railroads further suggest that attorneys' fees are justified under Trial Rule 41(A)(2).[4] They argue such an award is permissible as one of the conditions the court may impose in order to dismiss the case without prejudice. Such an allowance, they suggest, could be used to discourage a plaintiff from re-instituting frivolous litigation.
The City responds that there is no authority in this State to support such an argument. Although the Indiana Supreme Court was earlier presented such a theory in an eminent domain case such as this, no definitive position was taken. Therefore, we should not adopt such a rule at this time.
Next, the Railroads argue that because the City dismissed the action prior to its conclusion, it exhibited bad faith. Thus, under an exception to the rule, the court may award attorneys' fees under its inherent equitable powers.
The City responds that there is absolutely nothing in the record to show bad faith on its part.
Finally, the Railroads argue that the Indiana Relocation Assistance Act[5] allows the payment of attorneys fees to condemnees if the State dismisses prior to suit, and should be applicable to justify attorneys' fees in this case.
The City answers that the Indiana Relocation Assistance Act only applies to projects funded with federal money, and since no federal money was to be used in this project, this Act does not apply.

DECISION
CONCLUSION  Attorneys' fees may not be awarded on dismissal of the condemnor's (City's) complaint under these circumstances.
Deeply engrained in our adversary system of jurisprudence is the concept that absent specific statutory authority or contractual agreement each party involved in the litigation shall bear its own counsel fees. The American Rule, which is contrary *1113 to the English practice, has been adopted in Indiana:
The general rule requires each party to the litigation to pay his own counsel fees. Attorneys fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof; and it has been held that the rule applies equally in courts of law and in courts of equity. Trotcky v. Van Sickle (1949), 227 Ind. 441, 445, 85 N.E.2d 638, 640.
Utilization of the court's inherent equitable power has resulted in the recognition of several exceptions to the rule: (1) "obdurate behavior", (2) existence of a "common fund", and (3) the "private attorney general" theory. See Saint Joseph's College v. Morrison, Inc. (1973), 158 Ind. App. 272, 302 N.E.2d 865.
To justify the award of attorneys' fees by the trial court in this condemnation action, the Railroads seek sustenance from four sources: (1) the obdurate behavior, or bad faith exception to the general rule of nonrecovery of attorneys' fees by the successful party, (2) the provisions of TR. 41(A)(2), (3) the allowance for "costs" in the Eminent Domain Statute (Ind. Code § 32-11-1-10), and (4) the authorization for payment of attorneys' fees by the Indiana Relocation Assistance Act of 1971.

I. OBDURATE BEHAVIOR
The "Obdurate Behavior", "oppressive conduct", or bad faith (take your choice) exception to the general rule barring attorneys' fees in the absence of a specific statutory provision has been recognized in Indiana, Saint Joseph's College, supra, and other jurisdictions,[6] but has never formed the basis for an award of attorneys' fees in this state.
The Railroads cite City National Bank & Trust Company of Oklahoma City v. Owens (1977), Okl., 565 P.2d 4, as authority for the proposition that such an exception should be adopted in Indiana. In Owens the City National Bank brought a tort action arising out of an automobile accident. The case was filed in June, 1973, the cause was finally set for trial in December, 1976, a jury was impanelled, the case was tried for three full days, and on the fourth day after all the evidence was presented and the court had prepared instructions, the plaintiff dismissed his case without prejudice (which he could do under Oklahoma practice).
In awarding attorneys' fees the court commented on the special circumstances present:
In the case at hand, there is little doubt that plaintiff's actions were oppressive  he brought the controversy in litigation to trial, took the opportunity to test the strength and weakness of his case, then after the close of all the evidence, after the instructions had been decided upon, he dismissed, thus causing necessary expenses to be wasted by the defendants and causing the parties, attorneys, citizens and court employees to waste a considerable amount of time, money and effort. 565 P.2d at 8.
The oppressive conduct, or bad faith, exhibited in Owens is not present in the case before us.
The condemnation was part of a long list of street improvement projects approved by the D.O.T., a project to widen Capitol Avenue as an access route to the new "inner-belt" highway.
Within eight months after filing of the action, and before trial, it was determined by the City that the spurs were no longer needed, and the complaint dismissed. Nothing in the record indicates the dismissal came about for any reason other than a determination of lack of need of the spurs. Hardly enough to justify an exception to the general rule based on oppressive conduct or bad faith.

*1114 II. TRIAL RULE 41(A)(a)
The Railroads would support the award of attorneys' fees on the basis that even if no bad faith exists, TR. 41 permits an award of attorneys' fees when a party dismisses an action without prejudice because a dismissal may be "upon such terms and conditions as the court deems proper." While many Federal cases have taken that position,[7] no Indiana case has so held.
The only interpretation of this language in the rule as encompassing awarding of attorneys' fees is in Justice Prentice's concurring opinion in State v. Holder and State v. Rentchler (1973), 260 Ind. 336, 295 N.E.2d 799, in which he specifically rejects such a contention, i.e., "terms and conditions" only includes costs in the traditional sense.
The plurality opinion rejected payment of attorneys' fees to the property-owner defendant in that case as part of "costs" on dismissal of the State's condemnation complaint.
The Railroads seek to cast a pall on Holder and Rentchler by distinguishing it on various grounds, none of which have merit in our opinion.
In view of the Supreme Court's unequivocal holding in that case that "costs" do not include attorneys' fees as part of the costs referred to in the Eminent Domain Act, Ind. Code § 32-11-1-10, and Justice Prentice's conclusion that the language of TR. 41(A)(2) is not elastic enough to embrace attorneys' fees on dismissal, we can only conclude TR. 41(A)(2) does not form the basis for an exception to the exclusionary rule.

III. THE EMINENT DOMAIN STATUTE
As we have indicated, our Supreme Court in Holder and Rentchler flatly rejected the Railroads contention that the "costs" provision in Ind. Code § 32-11-1-10 authorizes an award of attorneys' fees ... a rejection we followed in State v. Palmwic Indiana Realty, Inc. (1973), 156 Ind. App. 488, 297 N.E.2d 479.
In Holder and Rentchler the language was:
A reading of this statute [Ind. Code § 32-11-1-10] reveals that only a general reference to costs is made and there is no special definition provided as to what a court may consider as costs. It has long been established in this State, however, that the base term "costs" does not encompass attorney fees. 295 N.E.2d at 800.
This was the conclusion of three members of the court despite a strong constitutional[8] argument by Justice Arterburn in dissent, that "costs" whether based on the usage of that term in Eminent Domain Act [Ind. Code § 32-11-1-10] or the language of TR. 41(A)(2), should include attorneys' fees as part of "just" compensation in order to "make a person whole."
We are bound by Holder and Rentchler ... and so are the Railroads.

IV.
The Indiana Relocation Assistance Act (the Act) is not a basis to award attorneys' fees.
Keeping in mind that our primary objective is to ascertain and give effect to legislative intent, Allen Co. Dept. of Public Welfare v. Ball Memorial Hospital Ass'n., Inc. (1969), 253 Ind. 179, 252 N.E.2d 424, we must construe two provisions of the Indiana Relocation Assistance Act (Indiana Act)[9] that provide the key to awarding attorneys' fees under the Act.
The Act was passed in 1971, coming into existence to implement the stated policy of *1115 the Federal Relocation Assistance Act[10] (the Federal Act), i.e., to insure that all property owners whose land was seized by Federal agencies, or by state agencies with federal financial assistance be treated fairly and uniformly. 42 U.S.C. § 4621. See also Young v. Harder (D.C.Kan. 1973), 361 F. Supp. 64.
The first of the provisions of the Act which we must construe, and on which the Railroads strongly rely for allowance of attorneys' fees, is Ind. Code § 8-13-18.5-13:
(a) The court ... shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if 
(1) ...
(2) the proceeding is abandoned by the agency. (Emphasis added). (Section 13 herein).
Thus a court may award reasonable attorneys' fees if an agency covered by the Act dismisses an eminent domain action. This means the Indianapolis D.O.T. must be an "agency" as defined by the Indiana Act in order for this provision to apply.
Another part of the Act, Ind. Code § 8-13-18.5-2, defines an "agency" to be:
(1) the Indiana state highway commission or any successor thereto,
(2) any state supported college or university having the power of eminent domain, and
(3) any other department, agency, board, commission, office or instrumentality of the state of Indiana, or of any political subdivision thereof, involved in activities described in section 16(b) [8-13-18.5-16(b)] of this chapter. (Emphasis added) (Section 2 herein)
Obviously the D.O.T. cannot qualify as an agency under the first two provisions of this paragraph, so it only becomes an agency if it is "involved in the activities described in Ind. Code § 8-13-18.5-16(b)." And what are they?
They are described in Ind. Code § 8-13-18.5-16(b) [16(b)]:
16(b) Any agency acquiring real property or engaging in code enforcement activities with federal financial assistance or acquiring real property reasonably anticipating that federal funds might be used to reimburse the cost of construction or other activity for which the real property is acquired and which is subject to the requirements of the Federal Uniform Relocations Assistance and Real Property Acquisitions Policies Act of 1970, as the same may be amended or superseded from time to time, shall not be required to make relocation payments or provide relocation assistance programs under the provisions of this chapter [8-13-18.X-X-X-XX-XX.5-20], or to comply with any procedures, rules or regulations under this chapter which may be inconsistent with applicable federal law or regulations, if such agency complies with all provisions of applicable federal law and regulations relating to relocation payments and assistance for persons displaced by the project. (Emphasis added). (Section 16(b) herein).
The only "activities" we glean from this section are those engaged in which require either the use of or reasonable expectation of use of federal funding. Unless federal funding is involved in a project, a political subdivision or department, etc., is not an agency as defined by Section 16(b) and therefore not subject to the provisions of the Act, including Section 13, allowing attorneys' fees.
Our conclusion is fortified by the Federal Act. The Federal Act requires states to enact measures to aid the relocation of persons displaced by eminent domain proceedings if federal funds are used in the displacement. 42 U.S.C. §§ 4627, 4628 & 4630. *1116 The Act,[11] the Indiana Act that is, closely follows many of the provisions in the Federal Act, and is obviously this state's response to a federal mandate.
While the purpose section of the Indiana Act, Ind. Code § 8-13-18.5-1, reads broadly:
8-13-18.5-1[3-1771]. Relocation assistance  Purpose of act.  The purpose of this chapter [8-13-18.5-1 - 8-13-18.5-20] is to establish a uniform policy for the fair and equitable treatment of persons displaced from homes, businesses or farms by reason of acquisition of real property for a public improvement of agencies of the state of Indiana, or other agencies having the power of eminent domain under the laws of this state, . . (Emphasis added).
its application has been narrowly limited by the definitional sections ... 2 and 10(b). It would seem the Legislature sought to comply with the federal mandate, but as narrowly as possible.
The record reveals that no federal financial assistance was used or expected to be used. The sole witness testified unequivocally that no such funding was involved and that the Federal Act was not applicable to this project. Therefore, under the applicable sections of the Indiana Act D.O.T. is not an "agency" and an award of attorneys' fees under Ind. Code § 8-13-18.5-13 is not allowable.
Additionally, we can find no merit in the Railroads' contention that as this project is "ancillary" to the federally funded construction of the "inner-belt" highway, the Act applies. There is nothing in either Act to support such a proposition.
Therefore, the judgment of the trial court is reversed insofar as it awards attorneys' fees.
SULLIVAN, P.J., concurs with opinion.
WHITE, J., concurs.
SULLIVAN, Presiding Judge, concurring:
Appellee Penn Central Transportation Company advances several bases upon which State v. Holder and State v. Rentchler (1973) 260 Ind. 336, 295 N.E.2d 799 can be distinguished. The argument is not without merit but I am now, as when I concurred specially in State v. Palmwic Indiana Realty, Inc. (2d Dist. 1973) 156 Ind. App. 488, 297 N.E.2d 479, compelled to read the majority opinion in Holder-Rentchler to preclude the award of attorney fees under T.R. 41(A)(2) in any condemnation action dismissed by the condemnor.
The underpinning of the Holder-Rentchler result is that such fees must be authorized by statute or by contract and may not be ordered paid solely as a discretionary condition of dismissal.
Thus, as in Palmwic, I concur but do so in the hope that the Supreme Court might reevaluate the course heretofore taken and under these circumstances, permit a trial court to award attorney fees under T.R. 41(A)(2) for condemnees who are put to unwarranted expense for the defense of actions improvidently brought by condemnors and which are voluntarily abandoned.
NOTES
[1] Ind. Code § 32-11-1-1 et seq.
[2] Ind. Code § 32-11-1-10 reads:

The costs of the proceedings shall be paid by the plaintiff, except that in case of contest, the additional costs thereby caused shall be paid as the court shall adjudge.
[3] Ind. Code § 32-11-1-8 reads:

... the court may make such further orders, and render such findings and judgments as may seem just....
[4] TR. 41(A)(2) reads:

Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.
[5] Ind. Code § 8-13-18.5-1 et seq.
[6] See, e.g., Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); McEnteggart v. Cataldo, 451 F.2d 1109 (C.A.1 1971); Bell v. School Bd. of Powhatan County, 321 F.2d 494 (C.A.4 1963); Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473 (C.A.4 1951); 6 J. Moore, Federal Practice 54.77[2], p. 1709 (2d ed. 1974).
[7] See, e.g., Wilson v. Jolly (D.C.Tex. 1948), 7 F.R.D. 649.
[8] Article I, § 22 of the Indiana Constitution reads:

"No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."
[9] Ind. Code § 8-13-18.5-1 et seq.
[10] 42 U.S.C. §§ 4601-4655.
[11] A survey of other states with similar legislation further reinforces the idea that the Indiana legislature intended to narrow this statute. Those states have specifically applied this relocation assistance to the acquisition of all property for the public welfare. See, e.g., Ariz.Rev. Stat. § 18-141  § 18-150.03; Cal.Gov't Code § 7260  § 7272.4 (Deering); Conn. Gen. Stat. Ann. § 8-266  § 8-281 (1958). They fail to make any reference at all to federal financial assistance, as a requirement.