**Charles J. MIKEL, Jr., Appellant,**

v.

**AMERICAN AMBASSADOR CASUALTY CO., Appellee.**

**No. 18A02–9403–CV–120.**

Supreme Court of Indiana.

July 6, 1995.

Donald K. McClellan, McClellan, McClellan, Brooke & Arnold, Muncie, IN, for appellant.

John B. Drummy, James W. Roehrdanz, Eric D. Johnson, Kightlinger & Gray, Indianapolis, IN, for appellee.

Transfer Denied, July 6, 1995.

DeBRULER, Justice.

The insured, Charles Mikel, Jr., appeals from a judgment in favor of his insurer, American Ambassador Casualty Co., in a declaratory judgment action brought by Mikel to establish coverage under his policy with American Ambassador and to recover his attorney's fees in prosecuting that action. Before the declaratory judgment action, American Ambassador denied coverage for Mikel's newly purchased automobile. After Mikel filed suit and further investigation of the claim, American Ambassador granted

coverage but refused to pay Mikel's attorney's fees.

## Facts

On November 11, 1992, Charles J. Mikel, Jr., was involved in an automobile accident while driving his recently purchased 1981 Oldsmobile Cutlass. Two days later, Mikel notified his insurer, American Ambassador, and told it that he had purchased the car on November 9, 1992. American Ambassador then conducted an initial investigation of Mikel's accident claim. The insurer's examination of the car's certificate of title led it to believe that Mikel had purchased the car on January 19, 1990. American Ambassador then denied coverage for the vehicle under Mikel's policy claiming (1) the car was not shown in the policy declarations and (2) Mikel did not request within 30 days of the car's purchase that American Ambassador insure it.

Mikel then filed an action seeking a declaration of coverage. Upon further inquiry into the vehicle's chain of title, American Ambassador failed to determine that Mikel did not follow the policy's notification requirement. During the pendency of Mikel's declaratory judgment action, American Ambassador granted his request for coverage but refused to pay attorney's fees incurred in the suit. The insurance contract itself contains the following language:

> In addition to our limit of liability, we'll pay on behalf of a covered person ... [o]ther reasonable expenses incurred at our request.

Mikel's attorney's fees and costs incurred in the declaratory judgment action totaled $2,477.50. He argued that he was entitled to recover attorney's fees under this "request" clause in his insurance policy. The trial court disagreed and entered judgment for American Ambassador.

## Discussion

I respectfully dissent from this court's denial of transfer of the present action decided by the Indiana Court of Appeals in *Mikel v. American Ambassador Casualty Co.* (1995), Ind.App., 644 N.E.2d 168. The case law of the various states splits on the question of a prevailing insured's ability to recover attorney's fees in a declaratory judgment action.

In general, the "American Rule" denies attorney's fees to the prevailing party absent an agreement between the parties, a statute, or other equitable ground. Many jurisdictions still follow this rule. See Annot., *Insured's Right To Recover Attorney's Fees Incurred in Declaratory Judgment Action To Determine the Existence of Coverage Under Liability Policy,* 87 A.L.R.3d 429 (1978).

However, many jurisdictions depart from the American Rule's treatment of attorney's fees in insurance contract litigation by creating exceptions in their statutes, court rules, and case law. For example, the Ohio Supreme Court has allowed the prevailing insured to recover attorney's fees incurred in a declaratory judgment action brought by the insurer concerning a homeowner insurance policy:

> [W]e conclude that the insured herein is entitled to recover reasonable attorney's fees. This action was brought to serve the sole interest of the insurer and arises out of Motorists' basic unwillingness to defend a suit in which it had a clear legal duty to defend, which even Motorists ultimately acknowledged. *The rationale behind allowing attorney's fees to date in defending the negligence action is that the insured must be put in as good a position as that which he would have occupied if the insurer had performed its duty.*

*Motorists Mutual Insurance Co. v. Trainor,* 33 Ohio St.2d 41, 47, 294 N.E.2d 874, 878 (Ohio 1973) (emphasis added). In *Occidental Fire and Casualty Company v. Cook,* 92 Idaho 7, 435 P.2d 364 (Idaho 1967), the insured successfully defended against the insurer's declaratory judgment action. As in the present case, the contract stated that the insurer "shall ... reimburse the insured for all reasonable expenses ... incurred at the company's request." *Occidental Fire,* 92 Idaho at 9, 435 P.2d at 368. Allowing the insured to recover his attorney's fees, the Idaho Supreme Court held that

> [t]he fact that this is a declaratory judgment action should have no effect on the award of "reasonable expenses" to the insured. Lloyd's rights are being determined in this cause and he is required to

defend. *Appellant Company cannot avoid its responsibility under Section II(e) of the insuring agreements, on the ground that the action is for declaratory judgment relief, when the effect upon the insured is as burdensome in its consequences as any other type of legal action.*

*Occidental Fire,* 92 Idaho at 11, 435 P.2d at 367 (emphasis added). Many of these jurisdictions similarly reject some of the distinctions created to limit these exceptions to the American Rule. For instance, rather than characterizing the award of attorney's fees as being "authorized" by an insurer's failure to defend the insured against a third party, the Minnesota Supreme Court characterized the award of insured's attorney's fees incurred in a declaratory judgment action as

> damages arising directly as the result of the breach. We think that the injured in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

*Morrison v. Swenson,* 274 Minn. 127, 138, 142 N.W.2d 640, 647 (Minn.1966). See also *Upland Mutual Insurance Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (Kan.1974). In *Hegler v. Gulf Insurance Co.,* 270 S.C. 548, 243 S.E.2d 443 (S.C.1978), the South Carolina Supreme Court allowed an award of attorney's fees to the insured after the insured had successfully defended the insurer's declaratory judgment action to avoid liability on a homeowner liability policy:

> There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage. In either event, an insured must employ counsel to defend—in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Hegler,* 270 S.C. at 550, 243 S.E.2d at 444–45. Similarly, the Maryland courts also have awarded attorney's fees for those insureds who themselves bring a declaratory judgment action against the insurer and prevail. *Cohen v. American Home Assurance Company,* 255 Md. 334, 349–363, 258 A.2d 225, 234–39 (Md.1969). Regardless of the characterization of the award, the actions in which the awards are allowed, or the party initiating the declaratory judgment action, the rationale underlying the award of attorney's fees is the same: to put the insured in as good a position as that which he would have occupied if the insurer had performed its duty.

Many of these decisions cite Appleman's criticism of the American Rule in insurance cases. Although the criticism is framed in terms of an insured successfully defending the declaratory judgment action initiated by the insurer, the criticism applies with equal force to the present situation in which the insured must sue for the benefit of the very coverage that he had purchased:

> After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof.... If the insurer can force him [the insured] into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.

7C, APPLEMAN INSURANCE LAW AND PRACTICE, § 4691, p. 282–83. Thus, the insured should be awarded attorney's fees for defending the declaratory judgment action. Although the Minnesota Supreme Court favorably cited the Appleman commentary in *Morrison,* it later seemed to restrict the *Morrison* holding to the particular facts of that case. *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (Minn.1966); *Abbey v. Farmers Ins. Exch.,* 281 Minn. 113, 160 N.W.2d 709 (Minn. 1968); *Rent–A–Scooter, Inc. v. Universal Underwrit. Ins. Co.,* 285 Minn. 264, 173 N.W.2d 9 (Minn.1969); *but see Security Mutual Casualty Company v. Luthi,* 303 Minn. 161, 226 N.W.2d 878 (Minn.1975).

In addition to the compensatory rationale for allowing attorney's fees, courts have also

cited the disparity of expertise and bargaining power between the insurance company and the individual policy holder as a reason to allow the insured to collect attorney's fees in a declaratory action against the insurer:

> Other courts have recognized that the disparity of bargaining power between an insurance company and its policyholder make the insurance contract substantially different from other commercial contracts. When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of the bargain of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured. Further, allowing an award of attorney's fees will encourage the prompt payment of claims.

*Olympic Steamship Co. v. Centennial Ins. Co.,* 117 Wash.2d 37, 811 P.2d 673, 681 (Wash.1991) (citations omitted), quoting *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, 79 (1986). That court also refused to treat declaratory judgment actions brought to resolve the issue of coverage any differently than those brought to resolve the insurer's duty to defend. *Id.* Again, whether the insured is forced into litigation by the insurer itself or by the insurer's refusal to defend the insured against a third party, the insured's recourse is still the same. See *Hayseeds,* 352 S.E.2d at 77–80. One can easily imagine litigation costs incurred in the declaratory action alone exceeding the very cost of the covered property. In automobile insurance coverage proceedings, this concern is especially troubling, since most Hoosiers who operate motor vehicles fulfill Indiana's statutory financial responsibility requirement by purchasing automobile insurance and cannot simply refuse to buy it. See IND.CODE ANN. § 9–25–4–1 (Burns Supp.1994); IND.CODE ANN. § 9–25–4–4 (Burns 1991).

Similar concerns have been expressed in our own case law concerning eminent domain proceedings. Justice Arterburn's dissent in *State v. Holder* (1973), 260 Ind. 336, 295 N.E.2d 799, articulated the problem of the disparities of expertise and resources that inhere in eminent domain proceedings. The facts in *Holder* are in many ways analogous to the present case. In *Holder,* the State condemned land owned by the landowner to make way for a highway. The trial court appraised the land to be worth $8,335.90. The State then filed exceptions to the amount and demanded a jury trial. A trial date was set, but the State then filed a motion for withdrawal of plaintiff's exceptions, which was granted over the landowner's objection. The trial court finally awarded the landowner the appraised value of the land, as well as attorney's fees and costs. The state, however, prevailed on appeal and the award of attorney's fees was overturned.

In his dissent, Justice Arterburn read the Just Compensation Clause of the Indiana Constitution, art. 1, § 21, to require the State to pay the landowner's attorney's fees and experts' costs. He especially emphasized that " '[j]ust compensation' is making one whole for what is taken from him by the State's action." *Id.* at 341, 295 N.E.2d at 802. Moreover, the complexities of modern land valuation and the marshalling of experts and technology to overwhelm the landowner led Justice Arterburn to conclude that an exception to the American Rule is warranted where there is such a disparity of information and resources. *Id.* at 343–44, 295 N.E.2d at 803–04.

I believe that Justice Arterburn's reasons for creating an exception to the American Rule in eminent domain proceedings militate in favor of creating a similar exception in declaratory judgment actions concerning automobile insurance policies. Just as the landowner looks to the social contract for protection, so too does the insured look to a private contract, i.e., his insurance policy, for protection. Both, however, confront bureaucracies with greater expertise and resources which can overwhelm each with the threat of any compensation awarded being consumed by litigation costs.

Moreover, many automobile insurance contracts are contracts of adhesion. There is neither a negotiation of the terms of the contract nor a relative equality of knowledge between the parties. The terms of the contract are within the sole control of the insurer, who can pepper the contract with self-serving phrases like the "request clause" in the present case. Indeed, it is difficult to imagine that an insurer will ever "request" an insured to bring suit against it, when through either inadvertence or intransigence, it refuses the benefits of coverage to the insured.

Allowing attorney's fees to the prevailing insured in a declaratory judgment action would lessen the disparity in bargaining power and promote the speedy payment of claims. In the present case, the insured sought declaratory relief to determine his coverage under the insurance contract. Again, whether the insurer or the insured brings the action should not determine whether the insured will be awarded attorney's fees should the insured prevail. The breach of duty to provide coverage should have some consequences, even though no fraud or bad faith was at issue. The insured contracted for protection, only to have the insurer first deny coverage, then concede coverage half way through the declaratory judgment proceeding. In short, the insured had to drag the insurer into court to make good on its promise to indemnify. If one believes that among the contingencies for which people buy insurance is the risk of litigation, then the only way to put the insured in as good a position as that which he would have occupied if the insurer had performed its duty is to allow him to collect reasonable attorney's fees when he successfully obtains declaratory relief.