**INDIANA STATE HIGHWAY COMMISSION, State of Ind., Aeronautics Comm. of Indiana, Appellants,**

v.

**Roger M. RICKERT, as Administrator of the Estate of Charles D. McDaniel, Deceased, Appellee.**

No. 981S234.

Supreme Court of Indiana.

Sept. 10, 1981.

Rehearing Denied Nov. 19, 1981.

Linley E. Pearson, Atty. Gen., Thomas R. Hamill, Deputy Atty. Gen., Indianapolis, for appellants.

Sherrill Wm. Colvin, John O. Feighner, Snouffer, Haller & Colvin, Fort Wayne, for appellee.

PIVARNIK, Justice.

This cause comes to us on petition to transfer from the Third District Court of Appeals. Transfer is sought by the Indiana State Highway Commission, appellant, and defendant in the trial court. Judgment was entered on a general verdict in favor of plaintiff-appellee and this judgment was affirmed by the Court of Appeals in a written opinion. *Indiana State Highway Commission v. Rickert* (1980) Ind.App., 412 N.E.2d 269.

Around 2:30 p.m., on June 27, 1975, George Keefe and Charles D. McDaniel were occupants in a small airplane owned by Keefe which was approaching Hap's Airport from a southerly direction for a landing. The crash occurred when the aircraft collided with a cement truck which was crossing an overpass at a point where the truck was in a direct line with the runway. The impact caused the plane to nose down

and crash in a parking lot, causing the death of both men. Hap's Airport had been in existence since about 1953. The airstrip had a runway 2200 feet in length which ran in a north-south direction. It was 22 feet wide. The southern edge of the runway was located 180 feet from an overpass which ran in an east-west direction. The overpass, part of Potter's Road, had been constructed by the Indiana State Highway Commission in 1959. It extended 16 feet higher than the elevation of the runway. The apex of the overpass was directly in line with the approach path to the runway.

This case began on February 3, 1976, when the Administrator of McDaniel's estate filed a complaint for damages against the Keefe estate, alleging that the collision was caused by the negligence or willful, wanton conduct of Keefe. On November 5, 1976, the Administrator moved to file an amended complaint and to join additional parties. This motion was granted. Plaintiff then joined the owners and operators of the cement truck, Tatlock, E. T. Slider, d/b/a Precision Concrete Company, and also the owner and operator of the Airport, William E. Happle, d/b/a Hap's Airport. Allegations against these defendants were that Tatlock negligently operated the cement truck and that Happle, the owner of Hap's Airport, invited planes to land on his premises and that the premises of Hap's Airport were improperly, negligently, and illegally designed, maintained, and marked, in violation of Ind.Code 8–21–7–3 (Burns 1971) and A.C.I. Regulation 3(A) of the Indiana Aeronautics Commission. On May 21, 1977, the plaintiff was granted leave by the court to file a second amended complaint joining additional parties and at this point joined the State of Indiana, the Indiana State Highway Commission, and Aeronautics Commission of Indiana. On March 20, 1978, before jury selection began, plaintiff dismissed his complaint against defendants Tatlock, E. T. Slider, d/b/a Precision Concrete, and William E. Happle, d/b/a Hap's Airport. Trial proceeded against the State of Indiana, the Indiana State Highway Commission, and the Aeronautics Commission of Indiana. The verdict of the jury

was rendered against the Indiana State Highway Commission only. The jury found in favor of the State of Indiana and the Aeronautics Commission of Indiana. Settlements had been made between the plaintiff and all parties that were dismissed prior to trial.

The primary charge of negligence against the State Highway Commission was that it had violated the Indiana High Structures Act, Ind.Code § 8–21–7–1, et seq. (Burns 1971) in the construction of the overpass. This Act provides:

Until a permit therefor has been issued by the Commission no person shall erect, add to the height of or replace structure, unless such replacement only involves the repair, maintenance or restoration of an existing structure:

(a) within an area lying 1,500 feet on either side of the extended center line of a runway or landing strip for a distance of 2 miles from the nearest boundary of any public use airport which will result in a structure extending to a height of more than 150 feet above the level of such runway or landing strip; nor, within that portion of such area that is within a distance of 3,000 feet from such nearest boundary, that will result in a structure extending higher than a height above the level of such runway or landing strip determined by the ratio of one foot vertically to every 20 feet horizontally measured from such nearest boundary;

(b) at any other place within this State which will result in a structure extending more than 500 feet above the highest point of land within a one mile radius from such structure."

Ind.Code § 8–21–7–3 (Burns 1971) [amended 1975, P.L. 93, § 15; 1977, P.L. 114, § 3; 1979, P.L. 101, § 1; 1980, P.L. 74, § 335].

The height of the overpass and its proximity to the runway of Hap's Airport was in violation of the minimum distances set out in this Act. The contentions of the State Highway Commission were that the statute did not apply to them and furthermore,

they had abandoned the roadway some fifteen years before the accident and it was under the custody and control of the county at the time of the accident, and finally, that they had negated the violation of the Act by purchase of the airspace from Hap's Airport through an inverse condemnation proceeding. The Commission attempted to raise the issue of the effect of the condemnation judgment by summary judgment in the trial court and was denied relief at that point. The issue was again raised during trial by an attempt to present the issue and again on motions for judgment at the close of plaintiff's evidence and at the close of all of the evidence and was again denied at all of these points. The Court of Appeals affirmed the trial court's action in denying relief to the Commission on this issue at all of these points. We hold this was error and accordingly vacate the opinion of the Court of Appeals and reverse the trial court.

The Commission attempted to prove the entry of an inverse condemnation judgment wherein the Commission paid Happle for the taking of the airspace that was violated by the overpass of the roadway. Attempt was made in the summary judgment motion prior to trial by offering certified copies of the condemnation judgment and was refused. The Commission again sought to introduce certified copies of this judgment during trial but the trial court refused to admit them, apparently on the grounds that they were irrelevant. The record shows that the Commission offered these exhibits as evidence during the trial and on their refusal by the court, made an offer to prove. Had the Commission been permitted to pursue this line of evidence, it is not denied the following facts would have been disclosed; that during the latter stages of the construction of the overpass the State Highway Commission became aware that its structure was in violation of the High Structures Act and that it restricted the usable airspace of Hap's Airport for certain portions of the runway when landing aircraft approached from the south.

Negotiations between the Commission and Happle were initiated in an attempt to resolve the problem. It was then resolved by Happle bringing an inverse condemnation action against the State Highway Commission in which Happle claimed the State Highway Commission had "taken" airspace necessary for use in the airport operation, that this "taking" interfered with Happle's right of egress and ingress through the air into said airport and made the use of the runway inadequate and unsafe for an airport and for the use for which it was intended. It was alleged that the airspace taken was a violation of the High Structures Act above noted. The taking was not contested by the State and judgment was entered in favor of Happle and against the Commission. Appraisers filed their reports as to value of the property taken and a jury trial had to determine the amount of damages suffered by Happle. The jury found Happle's damages to be $14,600 and this judgment was paid by the State.

■ It is the contention of the State that the effect of the condemnation judgment was to take this airspace out of the ownership and use of the airport facility and remove it as usable area for airport purposes, thus placing the State Highway Commission in a position where it was not in violation of the High Structures Act, even though the State Highway Commission may have been one of the parties subject to compliance with the Act. The Court of Appeals held that the exclusion of the evidence regarding the condemnation judgment was proper in that the evidence of the prior judgment was not admissible in this action since the plaintiff was not a party to the judgment nor in privity with a party to that suit. This was error. It is true that the appellate court of Indiana properly stated the rule in *Lasher v. Gerlach* (1939) 107 Ind.App. 572, 579, 23 N.E.2d 296, 299: "It may be stated as a general rule that a judicial record is not admissible where it is not relevant to any issue made by the pleadings in the action in which it is sought to be used or where it is sought to be used as against one not a party or privy to the former proceedings." A judgment is always evidence, however, of the fact that such a judgment has been given and en-

tered and of the legal consequences which result from the fact of that judgment. This is true whether or not the person against whom it was offered as evidence was a party to the action in which it was rendered. *VanNatta v. Crites* (1978) Ind. App., 381 N.E.2d 532. Judge Lowdermilk distinguished the difference in VanNatta by holding that use of a judgment from a prior proceeding to prove a fact upon which the supposed existence of the prior judgment was secured, does not present competent evidence to prove that fact against a person who was not a party to that action or in privity with any of the parties. The fact of that judgment, however, and the effect and consequences of it is binding on everyone thereafter and does not depend on privity or relationship. It is basic in our law that a judgment puts to rest the issues tried in arriving at the judgment and persons acting subsequently cannot ignore its effect as if it never happened.

The effect of the condemnation judgment was to take the airspace from the use of Hap's Airport, which was a private business, and put title of it in the State Highway Commission for public use of the roadway. This airspace was no longer available for Happle to use in his airport operation and obligated him to either close down his airport or move his airport operation farther north so that the approach from the south would be safe for incoming aircraft by having the approach threshold at a point farther north. The problem here is that Happle did not move his airport operation and used the same approach points of the runway that he had used before the condemnation judgment, subjecting the planes he invited to use the south approach to his airport to the dangers of the restricted approach. This was evidenced by the testimony of Wayne Reynolds, an inspector for the Aeronautics Commission, who inspected Happle's airport for purposes of certification in March, 1973. The Aeronautics Commission would not certify Happle's field because of the restricted approach from the south and also because of trees that presented obstruction on the north approach to the same runway. Since the trees

were on his property it would have been necessary for him to cut those trees and remove that obstruction. Reynolds testified that there were no visible markings on the runway. These markings are standard notification for approaching aircraft of the safe or usable landing area of the runway, and designates the usable runway length for landing aircraft. This is done by painting schematics of markings consisting of arrows, chevrons, bars and numbers in sequence up the runways to show those approaching in the traffic pattern the proper points for touchdown on the runway. This is referred to as the "threshold." These markings are understood by pilots approaching an airport and are visible to them in the traffic pattern so that they set the glide angle of their planes in the proper distances to land safely. The language used by Reynolds was that Happle's field required a displaced threshold to provide the twenty-to-one glide angle over the roads that would have put them in a safe position to use the runway. Happle had done none of this but continued to use the runway in the same position he had before the taking by the State Highway Commission and put pilots in peril by using the same airspace that had been purchased by the State Highway Commission.

■ Happle's obligation was to move his airport operation to the north and designate the threshold of the runway by the markings required by the Aeronautics Commission. That was the very purpose of the inverse condemnation action and that was the very effect of it in law and in fact. It cannot now be said that this judgment affected only those persons who were parties or in privity with the parties to that action. This judgment fixed the title in use of land as does any other condemnation action. In this regard, our case of *Indiana Toll Road Commission v. Jankovich* (1963) 244 Ind. 574, 193 N.E.2d 237, was pertinent to the issues here in that it determined that the airspace above property, at least up to a reasonable and usable distance, is property to the extent that one appropriating it for airport use must pay the owner of the sur-

face below for the appropriation of that property. This is consistent with the holding by the United States Supreme Court in *Griggs v. County of Allegheny* (1962) 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, *reh. denied,* 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16, wherein the United States Supreme Court held that the use of land presupposes the use of some of the airspace above it. The Court therein stated: "The glide path for the northeast runway is as necessary for the operation of the airport as is a surface right of way for the operation of a bridge, or as is the land for the operation of a dam. *See United States v. Virginia Electric Power Co.,* 365 U.S. 624, 630, 81 S.Ct. 784, 789, 5 L.Ed.2d 838. As stated by the Supreme Court of Washington in *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 413, 348 P.2d 664, 671, '. . . an adequate approachway is as necessary a part of an airport as is the ground on which the airstrip itself is constructed. . . .' Without the 'approach areas,' an airport is indeed not operable. Respondent, in designing it, had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough." *Griggs, supra,* 369 U.S. at 90, 82 S.Ct. at 534, 7 L.Ed.2d at 589.

Had defendant Highway Commission been permitted to put in the evidence showing the above facts, it would have been established that it was no longer in violation of the High Structures Act since the property of the airport that was to be used within the designated distances from the highway to the runway had been purchased from the airport owner and was no longer airport property. The fact that Happle took his judgment and yet continued to operate his airport in the manner that he did cannot operate to make the Highway Commission forever responsible for his actions. For this reason we do not need to decide the effect of the application of the High Structures Act to bodies politic nor the abandonment of the highway by the State Highway Commission fifteen years prior to the accident. Our holding here would be the same regardless of our findings on those issues.

This cause is remanded to the trial court with directions to enter judgment for defendant State Highway Commission.

GIVAN, C. J., and HUNTER, and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

According to the Aeronautics Commission of Indiana Law, Ind.Code § 8–21–1–1, *et seq.,* jurisdiction over persons and property involved in aeronautics is vested in the Aeronautics Commission of Indiana. That Commission governs and regulates the "design, construction, extension, operation, improvement, repair, or maintenance of airports, landing fields and other air navigation facilities. . . ." Ind.Code § 8–21–1–1(a). An airport is "any location either on land or water which is used for the landing and taking off of aircraft." Ind.Code § 8–21–1–1(b). An air navigation facility subject to the jurisdiction of the Commission includes airports and "any structures, mechanisms, lights, beacons, marks, communicating systems, or other instrumentalities or devices used or useful as an aid or constituting an advantage or convenience, to the safe taking off, navigation, and landing of aircraft. . . ." Ind.Code § 8–21–1–1(i).

In order to exercise its jurisdiction effectively the Aeronautics Commission was given authority to regulate the use of navigable airspace including approach zones to public use airports. Public use airports are areas of land or water "designed and set aside for the taking off and landing of aircraft. . . ." In the case before us Hap's Airport was a public use airport and all aeronautical facilities on it including its runway, as well as the approach zones to it through the air were subject to the control and regulation of the Aeronautics Commission to the end that they be "maintained in a reasonably unobstructed condition for safe flight of aircraft and the comfort and safety of the citizens of the state." Ind. Code § 8–21–7–2. The highway construction plan of the Highway Commission called

for the erection of an overpass which would invade the approach zone to Hap's Airport. It constructed that overpass into this regulated airspace after paying the airport owner some $15,000 in damages, but without procuring the permit required by Ind.Code § 8–21–7–3, from the Aeronautics Commission. Hap's Airport continued to use the runway in its existing location and length, and appellee's decedent in landing there flew into a truck being driven over the overpass.

In my view, the rights acquired by the State Highway Commission from the airport owner did not relieve it of the responsibility to acquire the permit required by law, because that acquisition did not satisfy the purposes to be served by that requirement. The Aeronautics Commission was vested with jurisdiction over the design, use, and alteration of the existing runway at Hap's Airport. The Highway Commission had no such jurisdiction. If the permit had been sought, the jurisdiction of the Aeronautics Commission with its expertise, special knowledge, and regulatory powers would have been invoked, to the end that any duties and responsibilities of either the Highway Commission or the airport resulting from the decision of the Aeronautics Commission upon the permit application would have been enforced. The acquisition of rights by the highway department in return for the payment of damages resolved the differences between the Highway Commission and the airport owner, but left the "persons and property in the air and on the ground" using the approach zone without the protections intended to be provided by the permit procedures. The permit requirement for the construction of structures impinging upon regulated airspace was applicable to the highway department, and continued to be so applicable after it acquired the interests of the airport owner. I am in accord with the trial court and the Court of Appeals and vote to affirm the judgment.