Diane COOK, Appellant,

v.

STATE of Indiana, Appellee.

No. 34A04–8806–CR–210.

Court of Appeals of Indiana, Fourth District.

Dec. 28, 1989.

Merrill W. Otterman, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Diane Cook appeals her conviction of Criminal Confinement for which she was sentenced to two years imprisonment. Cook took three of her children who were under eighteen years of age

to Florida, allegedly in violation of a statute which reads as follows:

"(b) A person who knowingly or intentionally:

(1) removes another person who is under eighteen (18) years of age to a place outside Indiana when the removal violates a child custody order of a court;

commits criminal confinement, a Class D felony." IND.CODE § 35–42–3–3.

In her divorce decree Cook was given visitation rights as follows:

" 'Petitioner [Wife]' shall have the right to visit said children and have the children visit with her so long as she conducts herself properly and provides a proper environment for such visitations."

Record, p. 166.

She claims in this appeal that the divorce decree did not specifically prevent her from removing the children from the state and, thus, she was not violating a "child custody order of the court."

We agree; therefore we reverse.

### FACTS

The facts most favorable to the jury's decision in this case are that Cook sold all of her possessions in Indiana in October of 1985 and took all her children—Valerie, age nineteen (19), Diana, age seventeen (17), Danny, age fourteen (14) and Brent, age ten (10)—to Florida with intent to conceal them from the trial court and, further, with the intent to deprive her ex-husband Dan Cook of his legal custody of the children.

Cook wrote her husband a letter containing the following statements:

"I don't want anything from you as far as support. I told you that once before. Just give me my babies. I will call you in a couple weeks and talk to you.

Don't worry about them at all. I will take good care of them. If you try to find us we'll just move again and I will keep them out of school and get a tutor for them so try to do it my way for now. You had them for 5 yrs and failed. So let me raise them for awhile. . . .

Take care of yourself and let me and the children alone and let me love them as they should be and when you really open up your eyes you'll see the grave mistake you've made with all of us. The only thing I wanted from you was friendship and to act as a father to our children. The only things the kids wanted was to love you as their daddy and for you to be a real daddy to them.

Take care of the new one [new baby of the husband's second marriage] because right now it's the only child you'll have around for awhile.

I am a good mother and I will take care of our babies so don't worry. I will write and send you pictures from time to time because I know deep down inside you really love the kids but you have really hurt them and for them it hurts a lot."

Record, p. 157.

### DECISION

■ It is a cardinal rule of criminal justice that penal statutes are to be strictly construed against the State. Ambiguities are to be resolved in favor of the accused. *Pennington v. State* (1981), Ind., 426 N.E.2d 408. Further,

"[t]he words of a statute creating an offense must be susceptible to interpretation by a person of ordinary intelligence. The Legislature must pay particular attention to the wording of a criminal statute, because even though an act may fall within the spirit of a statute, it will not constitute a public offense unless it also is within the words of the statute."

I.L.E. *Criminal Law*, Section 7.

■ The statute here punishes the removal of a minor "to a place outside Indiana when the removal violates a child custody order of a court." I.C. § 35–42–3–3. Strictly construing the statute, we hold it applies only to child custody orders that specifically prohibit the removal of a child from the state.

Cook asserts there is "absolutely no language in the court's order regarding custody and/or visitation either expressly or im-

pliedly forbidding or prohibiting the defendant, Diane Cook (petitioner) from removing her children to a place outside Indiana." Appellant's brief, p. 9. Thus, she claims the penal statute above does not apply.

Apparently it is the State's position that the statute here in question means several things. First, the statute is violated if there is an express prohibition in the custody order that the child may not be removed from the state. Second, the State claims that the statute is *also* violated when—although there is no express prohibition against removal from the state—the removal from the state occurs in connection with the attempt by a party to interfere with the court order. The second instance occurred here, says the State, because Cook, by concealing the children, was (1) depriving her husband of custody of the children in violation of the court order and (2) depriving the divorce court of its continuing jurisdiction. In support of its theory the State cites two cases and, while neither is directly in point, one civil case is helpful.[1] In *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, the custodial mother unilaterally determined that she should relocate in Arizona and thus deprived the husband, who resided in Indiana, of his visitation rights. The husband then petitioned for custody of the child in the Indiana court and his petition was granted. Our supreme court affirmed the trial court's action.[2] The court noted that the original divorce decree was silent concerning the removal of the child from the jurisdiction of the court. The court then addressed the meaning of such silence as follows:

"We are cognizant of the fact that the appellant was advised by her attorneys in Indiana and Arizona that since the decree was silent *re* the removal of said child, Andrea, from the jurisdiction of the court, that she had a legal right to do so. It is to this problem that we feel impelled to address ourselves.

The original decree of the court awarded the custody to the appellant and also conferred upon the appellee bi-weekly visitation rights at reasonable times and places. Since divorce matters, and particularly custody proceedings, are within the scope of equity, such a decree impliedly grants to the party receiving such visitation privileges the right to exercise the same, and a party to such a decree may not make a unilateral determination that will effectually deny such a party's rights to exercise the visitation privileges conferred by the decree.

Therefore, we hold that even though the decree is silent concerning the question of removing the child from the continuing jurisdiction of the trial court, to give full force and effect to said decree, such removal can only be made with prior judicial sanction, either by agreement of the parties approved by said court, or after due hearing before the court. Consistent with the idea of prior judicial sanction, the court may impose such terms and conditions as it may deem to be adequate and equitable in order to effectuate the provisions thereof. Failure to recognize and approach this problem as we have would be to approve such actions and countenance an unchecked license to flaunt and thwart the continuing jurisdiction of the court in child custody proceedings."

---

1. The State cites *Marchand v. State* (1982), Ind. App., 435 N.E.2d 284 in which the non-custodial father, during visitation, took one of his children from Indiana to Nebraska and effectively cut off the custodial rights of the mother, in violation of the very statute which we are addressing in this opinion. However, the case is not helpful because the issue before us was not raised on appeal nor were the terms of the custody order set out in the opinion. The only issue on appeal was whether certain evidence with respect to the intent of the father was properly excluded by the court.

2. In affirming, the court first pointed that a violation of the custody decree *alone* is not sufficient basis for modifying the decree, it is the child's welfare (best interests), not the parents', that must be considered by the court and be the basis of the custody order. The court then determined there was other evidence in addition to the violation of the court order which supported the trial court's decision.

*Id.* 311 N.E.2d at 813.

We observe the following with respect to *Marshall.* First, the court stated that both the wife's attorneys in Indiana and Arizona advised her that she had a legal right to remove the children from the jurisdiction of the court because the decree was silent in that regard. Those attorneys might very well have relied on the general rule, stated as follows:

> "If a decree grants custody of a child to a parent who resides within the jurisdiction of the court, but the decree is silent concerning the place where the child is to live, the custodian may, in the absence of a statute to the contrary, remove the child from the state."

24 Am.Jur.2d, *Divorce and Separation* § 989; also 27C C.J.S.2d *Divorce* § 636; *Giachetti v. Giachetti* (1982), Fla.App. 5 Dist., 416 So.2d 27 ("We recognize the rule that unless there is a residence restriction imposed on the custodial parent in the judgment of dissolution, the custodial parent may freely make such change." *Id.* at 29). Thus, there appears to be a genuine conflict with respect to the legal effect of a custodial order which does not specifically prohibit the custodial parent from removing a child from the jurisdiction of the court. Obviously, there was ambiguity in the *Marshall* order because, otherwise, our supreme court would not have been required to resolve it. Further, we observe that the decision in *Marshall* referred to both the removal of the child "from the continuing jurisdiction" of the trial court and the denial of the visitation rights of the non-custodial parent, thus implying that removal from this jurisdiction would not in and of itself violate such a custodial order—rather that removal must be in connection with interfering with either the continuing jurisdiction of the trial court or with the visitation rights of the non-custodial parent.

Our conclusion that ambiguity exists where, as here, the custodial order is silent on removal from the state, is reinforced by this court's opinion in *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23 where, in a child custody dispute, the wife claimed her husband was in contempt for failing to return the child to her custody in accordance with the terms of the custody decree. The court recognized the ambiguity of a non-specific custody and visitation order and commented in language which is very helpful here:

> "In order for a person to be punished for being in contempt of a court's order there must be an order or decree commanding the accused either to do or to refrain from doing something. 17 C.J.S. *Contempt* § 7 (1963). If there is no order, there can be no violation of a non-existent order. *Schultz v. State* (1949), 227 Ind. 33, 83 N.E.2d 784. While the ordinary method of enforcing custody and visitation privileges is by means of a contempt proceeding, if the provisions of the divorce decree concerning custody and visitation are indefinite, they may not be the basis of a contempt proceeding. 24 Am.Jur.2d *Divorce and Separation* § 796 (1966).
>
> The provisions of a divorce decree concerning custody or visitation rights should be definite and certain. If the decree is indefinite it invites a controversy as to the rights and duties of the parents; and it may be too indefinite to be enforced. An order or judgment which merely declares the rights of the parties in regard to custody and visitation, without any express command or prohibition cannot be the basis of contempt proceedings. After the court states the rights of the parties in an order or judgment it should state its orders or prohibitions. The portions of the decree relating to visitation rights should spell out the times, places, and circumstances of visitation, and a decree that defendant shall have the right to visit his children 'at reasonable times and places' is too indefinite to be enforced.'

*Id.* at 903. The agreement entered into between Gary and Wanda in the instant case and made a part of the court's decree is typical of the type described above. It provides that custody of Kim is placed in Wanda and '[t]he parties agree that it is in the best interest of the

child and the parties herein not to have formal visitation hours, but to allow visitation at the convenience of the child and the parties herein.' Such a provision in a decree is much too vague to be construed as an order of the court which would support a finding of contempt. There being no enforceable order of the court embodied in the language of the decree and Gary having returned Kim to Wanda at the conclusion of the December 11, 1978, emergency hearing upon the court's direct order, the trial court did not abuse its discretion in refusing to grant Wanda's Motion for Rule to Show Cause."

Having established the existence of ambiguity in the language in the statute before us, we find that such ambiguity must. be resolved in favor of the defendant. We do so under the authority of *Pennington v. State* (1981), Ind., 426 N.E.2d 408 where the defendant was charged with and convicted of failing to appear at a criminal hearing in violation of a statute which provided:

"A person, who having been released from lawful detention on condition that he appear at a specified time and place in connection with the charge of a crime, intentionally fails to appear at that time and place commits failure to appear, a Class A misdemeanor. However, the offense is a Class D felony if the charge was a felony charge."

IND.CODE § 35-44-3-6. In that case, the defendant was released at a hearing in open court and, *later,* notified to appear at another hearing. His conviction was based on the failure to appear at the later hearing. However, our supreme court observed that when he was released, he was not notified by the court that he was to appear at a specific time and place. Thus, the court held that, although the defendant might have violated the spirit of the statute which may have been designed to punish those who fail to appear at a criminal hearing, yet he did not violate the letter of the statute which required that, upon release by the court, he must be informed of the specific time and place of a subsequent

hearing. We quote the court's analysis of this situation and find it binding in the case before us:

"It is a cardinal rule of criminal justice, however, that penal statutes are to be strictly construed against the state and that ambiguities therein are to be resolved in favor of the accused. *Utley v. State* (1972), 258 Ind. 443, 281 N.E.2d 888; *Coleman v. State* (1970), 253 Ind. 627, 256 N.E.2d 389; *Zwick v. State* (1968), 250 Ind. 302, 236 N.E.2d 26; *State v. Gilbert* (1966), 247 Ind. 544, 219 N.E.2d 892; *Hutcherson v. State* (1978), [178] Ind.App. [8], 382 N.E.2d 983; *Rose v. State* (1976), 168 Ind.App. 674, 345 N.E.2d 257. The obvious purpose of the language of the statute is to thwart the intentional frustration of the administration of criminal justice. It perhaps could arguably be said the circumstances present here fall within the ambit of conduct contemplated by the legislature in its enactment of IND.CODE § 35-44-3-6, *supra.* See, e.g., *Murray v. State* (1957), 236 Ind. 688, 143 N.E.2d 290.

Yet, the invocation of criminal penalties on the basis that the spirit, although not the letter, of a penal statute has been violated is a path our courts have only rarely tread. See, e.g., *Cape v. State* (1980), [272] Ind. [609], 400 N.E.2d 161; *State v. Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609. This jurisdiction's virtually unwavering adherence to the requirement that both the letter and spirit of a statute must be violated eliminates the spectre of criminal laws subjectively applied or unwittingly violated. Our adherence to the rule of strict construction is demanded even though it might be argued the legislature's statutory proscription should have been more comprehensive. *Kelley v. State* (1954), 233 Ind. 294, 119 N.E.2d 322; *Loftus v. State* (1944), 222 Ind. 139, 52 N.E.2d 488."

*Id.* at 410.

Here, we conclude that the wife violated the spirit of the criminal statute which was obviously designed to prevent the problems which arise when a custodial or non-custodial parent travels outside the state with

the children. But, we must also find that, in the absence of specific restrictions in the custodial order, a custodial or non-custodial parent who removes the child from the state either with bad intent or, perhaps, with no intent whatsoever to violate the terms of the order, does not violate the letter of the law. Thus, our holding "eliminates the spectre of criminal laws subjectively applied or unwittingly violated." *Id.* We find that the statute means what it says, that the removal by the parent must violate a specific provision of the custody order.

The judgment is reversed with instructions to acquit the defendant.

ROBERTSON and CONOVER, JJ., concur.